IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TEREZE L. FENDERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 19-CV-1025-NJR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. SECTION 2255

COMES NOW the United States of America, by and through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Amanda M. Fischer, Assistant United States Attorney for said District, and submits this Response in Opposition to Petitioner Tereze L. Fenderson's Motion to Vacate, Set Aside, or Correct his Sentence (hereinafter the Petition) pursuant to Title 28, United States Code, Section 2255.  For the reasons that follow, this Court should deny the Petition outright without a hearing and with prejudice.

## PROCEDURAL HISTORY

On June 7, 2018, a grand jury for the Southern District of Illinois returned a Second Superseding Indictment charging Tereze L. Fenderson (Fenderson) with Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1) (Count 1); Felon in Possession of a Firearm and Firearm Ammunition, in violation of 18 U.S.C. §922(g)(1) and 18 U.S.C. §2 (Count 2); Attempting to Retaliate Against a Witness, in violation of 18 U.S.C. §1513(b)(2) and 18 U.S.C. §2 (Count 3); Discharge of a Firearm in Connection with a Crime of Violence, in violation of 18 U.S.C. §924(c)(1)(A) and 18 U.S.C. §2 (Count 4); and Discharge of a Firearm in Connection with a Drug Trafficking Crime, in violation of 18 U.S.C. §924(c)(1)(A) and 18 U.S.C. §2 (Count 5).[1]  Second

---

[1] Fenderson was initially charged by Indictment on May 16, 2017 (Crim. Doc. 1) and Superseding Indictment on January 4, 2018 (Crim. Doc. 29).

Superseding Indictment (Crim. Doc. 45) (attached as Exhibit A).[2]  Fenderson pled guilty to Counts 1, 3, and 4 on October 18, 2018.  Min. Entry (Crim. Doc. 64) (attached as Exhibit B).  At the time of his plea, Fenderson entered into a plea agreement with the United States which stated that the parties anticipated that Fenderson would have a total offense level under the Guidelines of 29 and would fall into criminal history category III, resulting in a Guidelines range of 108-135 months. Plea Agreement, at 4 (Crim. Doc. 65) (attached as Exhibit C). Further, the parties agreed that the guidelines imprisonment range for Count 4 is the minimum term of imprisonment required by the statute, which was an additional 120 months.  *Id.*  Fenderson agreed not to seek a sentence below the low end of the Guidelines range ultimately determined by the Court, and the United States agreed to recommend a sentence within that range.  *Id.* at 8.  A federal probation officer prepared a revised presentence investigation report (PSR) prior to sentencing. The officer found that Fenderson's total offense level was 26, thus resulting in a Guidelines range of 92-115 months, to be followed by 120 months on Count 4.  Second Revised PSR at 11-13, 25-26 (Crim. Doc. 97).[3] On March 7, 2019, the Court sentenced Fenderson to a total sentence of 212 months, consisting of 80 months as to each of Counts 1 and 3 to be served concurrently, 120 months as to Count 4 to be served consecutively to the terms imposed as to Counts 1 and 3, and 12 months as to the 18 U.S.C. §3147 enhancement to be served consecutively to the terms imposed as to Counts 1, 3, and 4. Judgment (Crim. Doc. 101) (attached as Exhibit D).  Fenderson did not file a direct appeal.

Fenderson timely filed the instant Petition pursuant to 28 U.S.C. § 2255 on September 19, 2019. Petition (Doc. 1). In the petition, Fenderson collaterally attacks his sentence, claiming one

---

[2] For purposes of this Response, any citations to documents in the criminal case record will be named, followed by "Crim." and the document number.  Any citations to documents to the instant civil case record, will contain the document number only.

[3] Due to the sealed nature of the PSR and because Bureau of Prisons (BOP) regulations prohibit Fenderson from personally possessing a copy of that document for institutional security reasons, the United States is not attaching a copy of that document as an exhibit to this Response.  However, it is available in the underlying criminal case record. Additionally, the undersigned understands that Fenderson may review his PSR at any time through his BOP case manager or counselor.

allegation of ineffective assistance of counsel for failure to properly apply the categorical approach in determining whether 18 U.S.C. §1513(b)(2) is a crime of violence for purposes of 18 U.S.C. §924(c).  *Id.* at 4.

## LEGAL STANDARDS

### A.    General Standard

A petition brought under 28 U.S.C. § 2255 allows a prisoner to attack his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006).  There are "significant procedural hurdles" to consideration of a petitioner's habeas claim. *Bousley v. United States,* 523 U.S. 614, 615 (1998). Collateral relief is appropriate only when the error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. Unites States,* 113 F.3d 704, 705 (7th Cir. 1997).

Habeas relief under § 2255 is not a substitute for direct appeal.  *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Thus, "[c]laims not raised on direct appeal are barred from collateral review unless upon review, we have been convinced that a failure to consider the issue would amount to a fundamental miscarriage of justice." *Id.* at 433.  Specifically, a § 2255 motion "*cannot* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original), overruled on other grounds by *Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994).

B.      **Ineffective Assistance of Counsel**

As evidenced by the instant Motion, by far the most common way a petitioner seeks to avoid the procedural proscriptions of § 2255 is by casting claims as ones alleging ineffective assistance of counsel which, except in limited circumstances, are not subject to dismissal based upon procedural default. *Fuller v. United States,* 398 F.3d 644, 650 (7th Cir. 2005). Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003). In fact, the Seventh Circuit has identified § 2255 motions as a more appropriate venue than direct appeal for raising ineffective assistance of counsel claims, as the opportunity to adequately "develop the factual predicate for the claim" arises independent of the trial record. *Id.*

If a § 2255 motion claiming ineffective assistance of counsel survives preliminary review and is considered on its merits, then a district court evaluates the claim under the two-pronged *Strickland* test. *McDowell v. Kingston,* 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). There is a heavy burden of proof on a defendant asserting an ineffective assistance of counsel claim. *Harris v. Reed,* 894 F.2d 871, 874 (7th Cir. 1990). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Under *Strickland,* the petitioner must prove: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McDowell,* 497 F.3d at 761. If the Court finds *either* the performance *or* the prejudice component of the ineffective assistance claim deficient under the *Strickland* test, then there is no need to consider the sufficiency of the other component. *United States v. Slaughter,*

900 F.2d 1119, 1124 (7th Cir. 1990).  "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

### 1.    Review of Attorney Performance

The Court's review of attorney performance is "'highly deferential,' with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman,* 314 F.3d 837, 840 (7th Cir. 2002).  Counsel is "strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment." *Cooper v. United States,* 378 F.3d 638, 641 (7th Cir. 2004).  The Court must presume that counsel made reasonable strategic choices unless the petitioner produces evidence rebutting that presumption. *Id.*  Hence, it is "not easy for a petitioner to show that his counsel's performance was objectively ineffective, as . . . '[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.'" *Hartjes v. Endicott,* 456 F.3d 786, 790 (7th Cir. 2006), *quoting Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986).  In order to establish that counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes,* 456 F.3d at 790.

### 2.    Prejudicial Effect of Attorney Performance

Proving that deficient performance of counsel actually prejudiced the defense requires a showing of the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004); *see also Williams v. Taylor,* 529 U.S. 362, 363 (2000).  This test is also "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States,* 397 F.3d 564, 568 (7th Cir. 2005).  The defendant must demonstrate that counsel's error actually had an adverse effect. *Strickland,* 466 U.S. at 693.  However, "[n]ot every adverse consequence of

counsel's choices is 'prejudice' for constitutional purposes." *United States v. Springs,* 988 F.2d 746, 749 (7th Cir. 1993). Counsel's conduct must be shown to have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cooper,* 378 F.3d at 642.

## ARGUMENT

**A.**    **Fenderson couches his claim in terms of ineffective assistance of counsel in an attempt to circumvent his end of his Plea Agreement bargain, while holding the United States to its end of the bargain and the recommendations and concessions it made, and his § 2255 motion should be viewed accordingly.**

Fenderson pleaded guilty pursuant to a written plea agreement in which he waived his appeal and collateral review rights. The Plea Agreement reads in relevant part:

> 4.    Defendant understands that by pleading guilty, Defendant is waiving all appellate issues that might have been available if Defendant had exercised the right to trial.

> 5.    Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack. However, in exchange for the recommendations and concessions made by the United States in this Plea Agreement, **Defendant knowingly and voluntarily waives the right to seek modification of or contest any aspect of the conviction or sentence in any type of proceeding**, including the manner in which the sentence was determined or imposed, that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), Defendant reserves the right to appeal the substantive reasonableness of the term of imprisonment. . . .

> 6.    Defendant's waiver of the right to appeal or bring collateral challenges shall not apply to: 1) claims of ineffective assistance of counsel; 2) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders Defendant actually innocent of the charges covered herein; and 3) appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission (see U.S.S.G. § 1B1.10). The United States reserves the right to oppose such claims for relief.

Plea Agreement, at 10-11 (Doc. 65). Additionally, the Defendant made the following acknowledgement in his Plea Agreement:

6

1. Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and has discussed the United States' case, possible defenses and defense witnesses with defense counsel. Defendant's attorney has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and possible defenses. Defendant acknowledges having had adequate opportunity to discuss the potential consequences of the guilty plea with defense counsel. Defendant has had all of Defendant's questions answered by defense counsel. Defendant agrees that this Plea Agreement is not the result of any threats, duress or coercion. Defendant enters this guilty plea freely, voluntarily, and knowingly, because Defendant is in fact guilty.

Plea Agreement, at 15 (Doc. 65).

Waivers of appeal in criminal cases are generally valid and binding in this circuit. *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2003); *United States v. Mason*, 343 F.3d 893, 893-894 (7th Cir. 2003); *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010). The government is aware that waivers of appeal do not foreclose appellate review in every instance, particularly when a defendant raises the specter of ineffective assistance of counsel and prosecutorial misconduct. *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002); *Chapa*, at 868. In this case, Fenderson totally ignores the promises he made, the bargain he struck, and the better-than-bargained-for result he obtained. He never claims that counsel was ineffective in negotiating the agreed upon recommendation of sentence or the other benefits extended to him. His claims should be viewed accordingly.

**B.    Petitioner's trial counsel's performance did not fall below an objective standard of professional reasonableness.**

Petitioner's trial counsel's performance was not constitutionally deficient due to his failure to raise the novel, and ultimately meritless, argument that petitioner now advances. A lawyer, including one representing a criminal defendant, has an ethical obligation to be truthful and forthright with the court and has "no duty to make a frivolous argument," *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003); *see also Faucett v. United States*, 872 F.3d 506, 512 (7th Cir. 2017) ("Refraining from a meritless sentencing argument cannot be characterized as objectively unreasonable."). He should not "to protect him or herself against allegations of inadequacy, "'waste the court's time with futile or frivolous motions.'" *United States v. Bosch*, 584 F.2d 1113,

1121-22 (1st Cir. 1978) (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)). Indeed, a lawyer is barred by the rules of professional ethics from doing so. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000). Under those rules, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis . . . for doing so that is not frivolous." Rule 3.1 of the Model Rules of Professional Conduct.

As more thoroughly discussed in Section C, *infra*, the argument that Petitioner suggests his trial counsel should have advanced is without merit. Thus, Petitioner's trial counsel did not act outside of the objective bounds of professional reasonableness in failing to raise it. The instant Motion should thus be dismissed, as "failure to satisfy either prong [of the *Strickland* test] is fatal to [an ineffective assistance] claim." *Ebbole*, 8 F.3d at 533.

The Government acknowledges that the argument may not have been frivolous, as one other court has since agreed with the position advanced by petitioner. However, the failure of petitioner's counsel to raise this argument in the face of persuasive case law supporting the application of 18 U.S.C. § 924(c) based on petitioner's conviction under 18 U.S.C. § 1513(b) was not clearly unreasonable. It was not clearly unreasonable for petitioner's trial counsel to believe that his conviction for shooting a witness constituted a crime of violence. In fact, there was case law supporting the petitioner's disposition at the time of his plea and sentencing hearings. In *United States v. Harris*, the Eastern District of Wisconsin denied a motion to dismiss on this same ground that 18 U.S.C. § 1513(b) was not a crime of violence, finding that the witness retaliation statute fulfilled that definition. 323 F.Supp.3d 1065 (E.D. Wisc. Aug. 3, 2018). This precise issue was decided by that court prior to the petitioner's plea of guilty. Additionally, the Seventh Circuit has previously allowed at least one conviction under 18 U.S.C. § 924(c), based on § 1513(b), to stand, although the precise issue was not raised on appeal. *See United States v. Vaughn*, 267 F.3d 653 (7th Cir. 2001); *see also United States v. Calvert*, 511 F.3d 1237 (9th Cir. 2008). Furthermore, trial counsel states in his affidavit that he believes that attempting to retaliate against a witness is,

in fact, a crime of violence, a position that has strong legal support and is advocated by the United States herein.  Brengle Affidavit (attached as Exhibit G).  **This Court should hold that trial counsel was not ineffective for failing to challenge established legal precedent.**

Even assuming that defense counsel was not aware of the *Harris* decision, this would have been a fairly novel legal argument, which has just recently gained traction in the Tenth Circuit alone.  The Seventh Circuit has stated:

> If, however, the argument that the lawyer fails to make is a subtle or esoteric one- something most lawyers would not have thought of, however conscientious they might be-then the lawyer cannot be said to have fallen below the *minimum* level of professional competence by failing to make it, and so the claim of ineffective assistance would fail even if the argument turned out to be a valid ground for a new trial. Criminal defendants have a right to a competent lawyer, but not to Clarence Darrow. See, e.g., *Thomas v. Gilmore,* 144 F.3d 513, 515 (7th Cir.1998); *Wade v. Franzen,* 678 F.2d 56, 58 (7th Cir.1982). A lawyer is not to be deemed incompetent merely for lacking the imagination "to anticipate arguments or appellate issues that only blossomed after defendant's trial and appeal have concluded," *Sherrill v. Hargett,* 184 F.3d 1172, 1175 (10th Cir.1999), though the clever lawyer would have spotted the bud.

*Rezin*, 322 F.3d at 446-47.  Even though defense counsel in other cases has raised this issue, although rarely, there certainly is not a clear consensus that petitioner would have been entitled to relief.  Although "[i]gnorance of well-defined legal principles is nearly inexcusable," "law is no exact science" and "'the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.'"  *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999).  *See also United States v. Jones*, 918 F.2d 9, 11-12 (2d Cir. 1990) (declining to find ineffective assistance of counsel based on an "unsettled question of law").

Further, there were strong strategic reasons for advising the defendant to enter into the ultimate plea agreement with the United States in this case, irrespective of this legal question.  As his plea counsel pointed out in his affidavit, even if he had pursued this argument, the length of time for potential incarceration based on a conviction for all other counts outweighed any benefit from dismissal of the relevant § 924(c) count.  Brengle Affidavit (attached as Exhibit G).  In fact, his plea counsel assessed his likelihood of conviction on all other counts as "nearly certain."  *Id.*

9

In the face of such odds, the decision to advise a client to plead guilty rather than pursue an unsettled legal argument and thereby put plea negotiations at risk certainly cannot be viewed as clearly unreasonable, particularly in light of the "highly deferential" standard in reviewing attorney performance and strong presumption that counsel acted reasonably.[4]

## C.    Petitioner did not suffer any prejudice as a result of his trial counsel's alleged deficiencies.

Even if trial counsel's performance was deficient, petitioner did not suffer any prejudice as a result of the alleged deficiency.  As an initial matter, Fenderson does not claim that he would not have pled guilty if his counsel had challenged the applicability of 18 U.S.C. § 1513(b) to an enhancement pursuant to 18 U.S.C. § 924(c).  He also does not challenge the validity of his plea, which the trial court determined that he entered knowingly and voluntarily.  Plea Transcript, at 15 (Doc. 87) (attached as Exhibit E).  During the course of that knowing and voluntary plea, Fenderson admitted to all of the underlying conduct.  In essence, although petitioner complains about his trial counsel's decision not to raise this novel and meritless argument, he does not allege that he would not have entered a plea of guilty had trial counsel done so.  Therefore, he has not demonstrated that the result of his proceedings would have been any different.

Furthermore, petitioner did not suffer any prejudice as a result of any alleged deficiency because his underlying argument is meritless.  First, § 1513(b) is a divisible statute, rendering the modified categorical approach appropriate.  Under that approach, the relevant documents make clear that Fenderson committed a "crime of violence" under § 924(c).  Even if this court finds that § 1513(b) is an indivisible statute and therefore applies the categorical approach, a conviction under § 1513(b) still properly supports a conviction pursuant to § 924(c).  Therefore, even if counsel's performance was deficient for failing to raise this argument, Fenderson was not

---

[4] At the time of filing this Response, the Government has not yet received an affidavit from petitioner's sentencing counsel.  To the extent that it may be helpful to the Court in resolving this issue, the Government will submit that affidavit to the Court upon receipt from sentencing counsel.

prejudiced by the allegedly deficient performance because his underlying argument is meritless. For that reason, Fenderson's petition should be denied.

1.  **The statute criminalizing retaliation against a witness, 18 U.S.C. § 1513(b)(2) is a divisible statute, requiring the modified categorical approach in determining whether it qualifies as a crime of violence for purposes of 18 U.S.C. § 924(c)(1)(A).**

Fenderson argues that retaliation against a witness is not a "crime of violence" for purposes of 18 U.S.C. § 924(c). Section 924(c)(1)(A) prohibits the use of a firearm "during and in relation to any crime of violence." Section 924(c)(3)(A) defines "crime of violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." This prong of § 924(c) is known as the elements clause.

The Supreme Court has set forth two methods for analyzing whether a conviction qualifies as a "crime of violence" for purposes of enhancement pursuant to 18 U.S.C. § 924(c)(1)(A). Under the "categorical approach," a court generally may "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602 (1990). This approach applies if the statute "enumerates various factual means of committing a single element," rendering it "indivisible." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). If the statute of conviction lists elements in the alternative, however, rendering it "divisible," the court may apply the "modified categorical approach" and "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id.*; *see Descamps v. United States*, 570 U.S. 254, 260-65 (2013). When a statute criminalizes multiple acts, courts look to the least of the acts criminalized to determine whether the crime fits within the definition of a "crime of violence" under the categorical approach. *Curtis Johnson v. United States*, 559 U.S. 133, 137-38 (2010). This type of determination requires "a realistic probability, not a theoretical possibility," that the crime can be committed in a way that falls outside the scope of the relevant "crime of violence" definition. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Section 1513(b)(2) applies to any person who "knowingly engages in any conduct and thereby causes bodily injury to another person or damages the tangible property of another person, or threatens to do so, with intent to retaliate against any person for any information relating to the . . . possible commission of a Federal offense."  The Government submits that this statute is divisible between "caus[ing] bodily injury" and "damag[ing] personal property," as well as between "threaten[ing] to" commit either offense."  A plain language reading of the statute supports a finding that it is divisible.  The statute uses the verb "causes" before the noun "bodily injury" and uses a different verb, "damages," before the term "tangible property," implying that the bodily-injury and property-damage variants have different elements, and thus are different crimes.  The "threatens to do so" phrase relates back to the bodily injury and property damage offenses, which implies that threatening bodily harm and threatening to damage property are two distinct threat crimes.

The wording does not "resolve the issue" of divisibility because it does not authorize different punishments for each type of injury.  *Mathis*, 136 S. Ct. at 2256 (2016).  However, the statute also fails to use a "single umbrella term" or a list of "illustrative examples" that would suggest that the two types of injury are merely alternative means of satisfying a single element.  *Id.* at 2256-57.  Instead, it lists two alternative types of conduct, each using a different verb and involving a different category of injury.  Another district court within the Seventh Circuit has also found that it is "more probable" that the modified categorical approach would be applicable to 18 U.S.C. § 1513(b) "because the statute defines three ways to commit witness retaliation, not three means by which to satisfy one element of that offense."  *Harris*, 323 F.Supp.3d at 1070 (citing *Mathis*, 136 S. Ct. at 2253).

Moreover, the Second Superseding Indictment and Plea Agreement in this case refer only to causing bodily injury and make no mention of property damage.  Second Superseding Indictment (Crim. Doc. 45); Plea Agreement, at 2 (Doc. 65).  "[A]n indictment and jury

instructions could indicate, by referencing one alternative term to the exclusion of all others, that

the statute contains a list of elements, each one of which goes toward a separate crime.  *Mathis*,

136 S. Ct. at 2257.   The Government routinely charges defendants with the bodily injury offense

alone, further supporting this argument.  Several courts of appeals in those cases have held that the

elements of the offense are (1) knowing engagement in conduct that (2) causes or threatens to

cause bodily injury to another person, with (3) retaliatory intent.  *See United States v. Cofield*, 11

F.3d 413, 419 (4th Cir. 1993); *United States v. Gadson*, 763 F.3d 1189, 1218 (9th Cir. 2014);

*United States v. Henderson*, 626 F.3d 326, 342 (6th Cir. 2010).

The Fourth Circuit recently addressed this precise issue and agreed with the Government

that the witness retaliation statute is divisible.  *United States v. Allred*, 2019 WL 5792489 (4th Cir.

2019).  The Court explained,

> Section 1513(b)(1) easily divides into four separate general offenses: (1) engaging
> in conduct that causes bodily injury, (2) threatening to engage in conduct that
> causes bodily injury, (3) engaging in conduct that damages tangible property, and
> (4) threatening to engage in conduct that damages tangible property. Both the
> statute's plain text and other typical indicia of divisibility make this conclusion
> inescapable.

*Allred*, 2019 WL 5792489 at 4.   The court then went on to examine whether "the behavior

underlying one statutory phrase 'differs so significantly from the behavior underlying' another"

that they must treated as different crimes.  *Id.* at 5 (citing *Chambers v. United States*, 555 U.S. 122,

126 (2009).  In conducting this analysis, the Court held:

> Applying *Chambers* to the instant case, we have no trouble in concluding that §
> 1513(b) sets forth alternative elements and thus creates separate crimes. Put simply,
> the behavior typically underlying the causation of bodily injury "differs so
> significantly" from that underlying damage to property that those statutory phrases
> cannot plausibly be considered alternative means. *Chambers*, 555 U.S. at 126. The
> former is concerned with conduct threatening bodily integrity and safety, while the
> latter deals only with damage to physical possessions. Congress's decision to
> employ different verbs to characterize each of the proscribed harms (i.e., "*causes*"
> bodily injury versus "*damages*" tangible property) bolsters this conclusion.

*Id.*  The *Allred* court further analyzed various model jury instructions that contemplate a jury being

instructed as to either bodily injury or damage to tangible property, not both, as support for this

conclusion, along with the fact that the Government typically charges this offense under one prong alone. *Id.* at 5-6. This court should adopt the same reasoning as the *Allred* court in determining that 18 U.S.C. § 1513(b) is a divisible statute and thus subject to analysis using the modified categorical approach.

Because § 1513(b) is a divisible statute, this Court can look to supporting documents, such as the Second Superseding Indictment and Plea Agreement, to determine the specific conduct committed by Fenderson. The Superseding Indictment charges that Fenderson "did knowingly engage in conduct that caused bodily injury to T.R., with the intent to retaliate against T.R., in that Fenderson shot T.R. with a firearm believing that T.R. had given information to a law enforcement officer relating to the commission or possible commission of a Federal offense." Second Superseding Indictment (Crim. Doc. 45). Further, the elements listed in the Plea Agreement, signed and agreed to by Fenderson, state, "1) The defendant knowingly caused bodily injury to T.R.; and 2) The defendant did so with the intent to retaliate against T.R. for any information relating to the possible commission of a federal offense given by T.R. to a law enforcement officer." Plea Agreement, at 2 (Doc. 65). These elements were further recited by the trial judge and acknowledged by the defendant during his plea hearing. Plea Transcript, at 12 (Doc. 87). At the time of his plea, Fenderson stipulated that after searching for and locating T.R., he and another individual "began shooting at T.R., striking him in the hip and lower leg. . . . T.R. was taken to a nearby hospital for treatment. The shot to T.R.'s lower leg broke both of the bones, requiring multiple surgeries to repair." Stipulation of Facts, at 3 (Doc. 66) (attached as Exhibit F). There is no doubt that Fenderson entered a plea of guilty to the element of causing bodily injury, as opposed to damaging tangible property. Furthermore, Fenderson does not even attempt to argue that "causing bodily injury" is not sufficient for 18 U.S.C. § 924(c).

Courts routinely hold that offenses such as robbery and assault, which require the infliction or threatened infliction of bodily harm or injury, qualify as crimes of violence under the elements

clause.  *See, e.g., De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011) (a statute requirement of any bodily injury comports with the ACCA force requirement as defined in *Curtis Johnson*); *United States v. Chapman*, 866 F.3d 129 (3d Cir. 2017) (18 U.S.C. §§ 871(a) (mailing a threat to harm the President) and 876(c) (mailing a threat to injure) are "crimes of violence" under career offender guideline); *United States v. Anderson*, 695 F.3d 390, 401 (6th Cir. 2012) (statute requirement of "physical harm" in aggravated assault statute is sufficient); *United States v. Vinton*, 631 F.3d 476, 485-86 (8th Cir. 2011) (concluding that Missouri's second-degree assault statute, which "requires a showing that the defendant attempted to cause, or knowingly caused, physical injury to another person," has as an element the use or attempted use of physical force); *United States v. Forrest*, 611 F.3d 908, 910-11 (8th Cir. 2010) ("A threat that creates a fear 'of imminent serious bodily injury' is a threat of physical force."); *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1290-91 (9th Cir. 2017) (citing numerous consistent Ninth Circuit cases); *United States v. Williams*, 888 F.3d 1126, 1132-33 (10th Cir. 2018) (requirement of bodily injury satisfies the physical force requirement).

Moreover, the degree of injury or harm required by the statute need not be significant. "While mere touching is not enough to show physical force, the threshold is not a high one; a slap in the face will suffice."  *United States v. Duncan*, 833 F.3d 751, 754 (7th Cir. 2016); *see also Curtis Johnson*, 559 U.S. 133, 143 (2010) (holding that a "slap in the face" is sufficient physical force under ACCA).  Certainly, shooting the victim with a firearm, as Fenderson admitted to doing in this case, is sufficient force to qualify as a "crime of violence."  Therefore, using the modified categorical approach, Fenderson's conviction under 18 U.S.C. § 1513(b)(2) was a valid predicate offense for his conviction under 18 U.S.C. § 924(c)(1)(A).

**2.      Even if the statute is indivisible, rendering the categorical approach appropriate, 18 U.S.C. § 1513(b)(2) qualifies a crime of violence for purposes of 18 U.S.C. § 924(c)(1)(A).**

Fenderson argues that the least of the acts criminalized by 18 U.S.C. § 1513(b)(2), damaging the tangible property of another, does not satisfy the requirements to be classified as a "crime of violence" for purposes of 18 U.S.C. § 924(c)(1)(A).  As stated above, the elements clause of that statute defines "crime of violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The question, then, is whether the requisite damage to property satisfies the requirement of the use, attempted use, or threatened use of physical force to support a conviction under § 924(c).

The Supreme Court has never explicitly considered the definition of "physical force" necessary under § 924(c)(3)(A).  However, it has addressed the definition of "force" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i).  The ACCA's elements clause is worded similarly to the elements clause in § 924(c)(3)(A) except that it only addresses force against a "person" as opposed to a person or "property."  In *Curtis Johnson*, the Supreme Court held that "physical force" does not include "the slightest offensive touching."  *Curtis Johnson*, 559 U.S. at 139.  The Court has further held that "physical force" does include force that goes beyond mere touching, and that any force with the "potentiality" of causing "physical pain or injury" would suffice.  *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019).  The *Stokeling* Court expressly rejected the theory that "the level of force must be 'severe,' 'extreme,' 'furious,' or 'vehement.'" *Id.* at 553.  Both the *Curtis Johnson* and *Stokeling* opinions involved the use of force against the person, but the same logic applies to the use of force against property.  Under *Curtis Johnson*, therefore, the slightest touching of property—such as trespass—would not qualify as a crime of violence.  However, under *Stokeling*, force that has even the potentiality of causing damage to the property would suffice.   Therefore, retaliation against a witness through property damage constitutes a crime of violence because it requires force sufficient to cause damage to property.

Thus, this Court should interpret the "physical force" required under the elements clause of § 924(c) as force capable of causing physical pain or injury.  With respect to property, "injury" would refer to any harm or damage.  This position is consistent with the Second Circuit and the district court for the District of Columbia.  In *United States v. Hill*, the Second Circuit addressed the question of whether a Hobbs Act robbery failed to qualify as a crime of violence under § 924(c) because it could be committed by "putting [the victim] in fear of injury to his property through non-forceful means."  890 F.3d 51, 57 (2d Cir. 2018).  In *Hill*, the defendant created several hypothetical situations that could place a victim in fear of injury to his property without the threat of any force, such as "threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to 'pour[] chocolate syrup on his passport.'"  *Id.*  The Court rejected the defendant's arguments and noted that the "physical force" required by § 924(c) "means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property."  *Id.* at 58.  Thus, the Second Circuit held that the defendant's hypotheticals involve the use or threatened use of physical force because they put the victim in "fear of injury" to his or her property.  *Id.*

Furthermore, in *United States v. Abu Khatallah*, the district court for the District of Columbia analyzed whether another statute, 18 U.S.C. § 1363, involved "the use, attempted use, or threatened use of physical force against the person or property of another" sufficient to support a § 924(c) conviction.[5]  316 F.Supp.3d 207 (D.D.C. June 26, 2018).  The court framed the issue as "whether a defendant's injuring, attempting to injure, or conspiring to injure federal property necessarily means that he used, attempted, or threatened force against that property."  *Id.* at 213.  The court explained that *Curtis Johnson*'s "definition of physical force simply requires that all of

_____

[5] 18 U.S.C. § 1363 provides: "Whoever, within the special maritime and territorial jurisdiction of the United States, willfully and maliciously destroys or injures any structure, conveyance, or other real or personal property, or attempts or conspires to do such an act, shall be fined under this title or imprisoned not more than five years, or both, and if the building be a dwelling, or the life of any person be placed in jeopardy, shall be fined under this title or imprisoned not more than twenty years, or both."

the prohibited acts involve 'force capable of causing physical injury.'" *Id.* at 215.  The Court contrasted actions such as tarring a courthouse or breaking a sprinkler–which are not "particularly brutal" but require "force capable of causing physical injury"–with a *de minimis* intrusion–"like a trespassory but otherwise harmless touch." *Id.*  The court ultimately concluded that "a crime like § 1363—which has as an element the intentional injury of property—categorically requires that the defendant use force capable of causing injury to that property." *Id*.

These opinions are further supported by analogizing the crime at issue in this case to Hobbs Act robbery.  The Seventh Circuit has held that Hobbs Act robbery is a "crime of violence" under the elements clause of § 924(c), which applies to the use of force against "the person *or property* of another." *United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017).  The Seventh Circuit cited support for this position by many other circuits.  *See United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017); *United States v. Hill*, 832 F.3d 135, 140-44 (2d Cir. 2016); *In re St. Fleur*, 824 F.3d 1337, 1340 (11th Cir. 2016); *United States v. Howard*, 650 Fed.Appx. 466, 468 (9th Cir. 2016).  The same reasoning dictates that § 1513(b) qualifies as a crime of violence under § 924(c)(3)(A); like Hobbs Act robbery, it can be committed by using force against property, which is explicitly contemplated by § 924(c)(3)(A).

Other applications of this definition of "physical force" further support its applicability to § 1513(b)(2).  In *Castleman*, the Supreme Court clarified that force "encompasses even its indirect application," such as "'administering a poison or by infecting with a disease, or even by resort to some intangible substance,' such as a laser beam." *United States v. Castleman*, 572 U.S. 157 (2014).  In analyzing the defendant's hypothetical situation of sprinkling poison in a victim's drink, the Court explained:

> The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm.  That the harm occurs indirectly, rather than directly (with a kick of punch), does not matter. Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

18

*Id.* at 171.

Using this same logic, a recent dissenting opinion in *United States v. Bowen* utilized the same reasoning in arguing that § 1513(b) qualifies as a "crime of violence."  936 F.3d 1091, 1117 (McHugh, dissenting).   This dissenting opinion provides a persuasive analogy, supported by *Castleman* and *Curtis Johnson*:

> In my view, then, a threat to "damage[] the tangible property of another person," 18 U.S.C. § 1513(b), is a crime of violence because it is a threat to use physical force capable of causing injury against the property of another.  18 U.S.C. § 924(c)(3)(A).  As a result, I would hold that a threat to spray paint someone's car, to place their electronic devices in water, or to otherwise damage their property are crimes of violence.  And whether the actor gently places the electronic device in a full bathtub or violently slams it into the water from atop the toilet is irrelevant.  In either case, the "violence" is the damage to the property.  Consequently, I would also conclude that retaliation against a witness is a crime of violence under § 924(c) . . . .

*Id.*

The majority in *Bowen* disagreed that § 1513(b) is a "crime of violence" under § 924(c). The *Bowen* court rejected the definition of "physical force" as "force sufficient to cause damage to property" because it believed that the force needed to damage property would not necessarily rise to the level of "violent" force.  *Bowen*, 936 F.3d at 1103-04.  However, this court should not follow the flawed reasoning of the majority in *Bowen*.  The statute, § 924(c), does not use the term "violent force;" it only refers to "physical force."  In *Curtis Johnson*, the Court did define "physical force" as "violent" force.  *Curtis Johnson*, 559 U.S. at 140.  However, the Court clarified that statement in *Stokeling* by refusing to read *Curtis Johnson* as establishing a "high" threshold for force and defining "violence" at one point as "unjust or improper force."  *Stokeling*, 139 S. Ct. at 553.  The *Bowen* court suggested that *Stokeling* had defined "physical force" as force that is "inherently violent."  *Bowen*, 936 F.3d at 1106-07.  But *Stokeling* did no such thing; the Court simply observed that the force involved in the crime at issue in that case (robbery) was "inherently

violent." *Stokeling*, 139 S. Ct. at 553.  The Court did not create a new test requiring inherent violence.

The *Bowen* court next emphasized that *Curtis Johnson* and *Stokeling* both involved a statute, § 924(e), that refers to the use of physical force against a person, while the statute at issue here, § 924(c), refers to the use of physical force against a person or property.  *Bowen*, 936 F.3d at 1106-07.  That argument is unpersuasive.  It makes little sense to rely upon *Curtis Johnson* and *Stokeling* to hold that force must be "violent" to qualify as "physical force" under § 924(c), but then to turn around and discard *Johnson* and *Stokeling* when figuring out what "violent" means.

Finally, the *Bowen* court observed that under the government's legal theory, a person could commit a crime of violence by spray painting a car or pouring chocolate on someone's passport, borrowing the hypotheticals from *Hill*.  *Bowen*, 936 F.3d at 1107.  The court was correct that the government's legal theory could, in principle, lead to those results.  As a textual matter, however, the acts described do involve the use of physical force against the property of another.  Moreover, these situations are unlikely to arise in practice.  A crime qualifies as a "crime of violence" only if it is a felony, and spray painting a car, for example, is unlikely to be prosecuted as a felony.  In addition, § 924(c) applies only where someone uses a firearm during and in relation to the crime, and it is difficult to envision a case in which someone uses a firearm during and in relation to a trivial offense such as pouring chocolate syrup on a passport.

In the context of § 924(c), "physical force" should be understood qualitatively, not quantitatively.  A particular amount of force may qualify in one context but not another.  For example, in *Stokeling*, the Court agreed that "the amount of force necessary to overcome a victim's resistance" meets the definition of "physical force" for purposes of the ACCA, even if that resistance is slight.  *Stokeling*, 139 S. Ct. at 555.  In doing so, the Court seemed to recognize that the use of force is contextual.  Force necessary to overcome resistance differs "in kind," even if not in pure physical degree, from "unwanted" touching.  *Id.* at 553.  In this case, similar contextual

principles suggest that because § 1513(b) requires "damage" to property, it satisfies the elements clause of § 924(c)(3)(A).  Property is reasonably viewed to be "damage[d]" when it is defaced, by whatever means.  Such "damage" could reasonably be viewed as a form of the "injury" that the "physical force" must be capable of causing.  Because the statute requires proof of a knowing act that in fact caused such damage, it is reasonable to infer that every violation of § 1513(b) inherently includes what would be, in context, the use, attempt, or threat of force.

Because § 1513(b) satisfies the requirements of "physical force" set forth in § 924(c)(3)(A), it qualifies as a "crime of violence" for purposes of § 924(c)(1)(A).  Therefore, Fenderson is not entitled to relief even under the categorical approach.  This argument has no merit and Petitioner therefore did not suffer any prejudice as a result of his attorney's failure to raise it.  For that reason, his petition should be denied.

## CONCLUSION

Based on the foregoing, the Government respectfully requests that this Honorable Court deny Petitioner's Motion in its entirety without an evidentiary hearing.

Respectfully submitted,

THE UNITED STATES OF AMERICA

STEVEN D. WEINHOEFT
United States Attorney

*s/ Amanda M. Fischer*
AMANDA M. FISCHER
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL 62208
Phone: (618) 628-3700
Fax: (618) 628-3730
E-mail: amanda.fischer@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TEREZE L. FENDERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | CIVIL NO. 19-CV-1025-NJR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2019, I electronically filed the following document: GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. SECTION 2255 with the Clerk of Court using the CM/ECF system, which will send notification of such filing(s) to the following:

None

and I hereby certify that on November 25, 2019, I mailed the document(s) to the following non-registered participants:

Tereze L. Fenderson
Reg. No. 13802-025
FCI Pekin
Federal Correctional Institution
P.O. Box 5000
Pekin, IL 61555
(via United States Mail)

Respectfully submitted,

*s/ Amanda M. Fischer*
AMANDA M. FISCHER
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL 62208
Phone: (618) 628-3700
Fax: (618) 628-3730
E-mail: amanda.fischer@usdoj.gov