IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TEREZE L. FENDERSON,**<br><br>　　　　Petitioner,<br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>　　　　Respondent. | Case No. 3:19-CV-1025-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

　　　　Petitioner Tereze L. Fenderson ("Fenderson") filed a Petition to Vacate, Set Aside, or Correct his Sentence pursuant to Title 28, U.S.C. § 2255. Specifically, Fenderson claims he received ineffective assistance of counsel for his failure to apply the categorical approach to determine whether 18 U.S.C. § 1513(b)(2) is a crime of violence for purposes of 18 U.S.C. § 924(c). For the reasons set out below, the Petition is **DENIED**.

## PROCEDURAL HISTORY

On June 7, 2018, a grand jury for the Southern District of Illinois returned a five-count second superseding indictment charging Fenderson with: (1) Felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); (2) Felon in possession of a firearm and firearm ammunition, in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2; (3) Attempting to retaliate against a witness, in violation of 18 U.S.C. § 1513(b)(2)

1

and 18 U.S.C. § 2; (4) Discharge of a firearm in connection with a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2; and, (5) Discharge of a firearm in connection with a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2. *United States v. Fenderson*, 17-cr-30090-MJR (S.D.Ill.)(CR. 45).[1] On October 18, 2018, Fenderson pled guilty to Counts 1, 3, and 4 (CR. 64).

At the time of his plea, Fenderson entered into a plea agreement with the United States which stated that the parties anticipated that Fenderson would have a total offense level under the Guidelines of 29 and would fall into criminal history category III, resulting in a Guidelines range of 108-135 months (CR. 65). Further, the parties agreed that the guidelines imprisonment range for Count 4 is the minimum term of imprisonment required by the statute, which was an additional 120 months (*Id.*). Fenderson agreed not to seek a sentence below the low end of the Guidelines range ultimately determined by the Court, and the United States agreed to recommend a sentence within that range (*Id.* at p. 8).

A federal probation officer prepared a revised presentence investigation report ("PSR") prior to sentencing (CR. 80). However, there were some issues and a second revised PSR was issued wherein Fenderson's total offense level was determined to be 26, which resulted in a guidelines range of 92-115 months, to be followed by 120 months on Count 4. (CR. 97).

---

[1] All documents cited to criminal case will be designated as "CR", while all documents cited to this §2255 matter will be designated as "Doc.".

On March 7, 2019, the Court sentenced Fenderson to a total term of 212 months, which consisted of 80 months as to each of Counts 1 and 3 to be served concurrently and 120 months as to Count 4 to be served consecutively to the terms imposed as to Counts 1 and 3 (CR. 99). There was also the 12 month enhancement as to 18 U.S.C. § 3147, which was to be served consecutively to the terms imposed as to Counts 1, 3, and 4 (*Id).* Judgment was entered on March 15, 2019 (CR. 101). Fenderson did not file a direct appeal.

On September 19, 2019, Fenderson timely filed this matter pursuant to 28 U.S.C. § 2255 (Doc. 1). In the petition, Fenderson collaterally attacks his sentence, claiming one allegation of ineffective assistance of counsel for failure to properly apply the categorical approach in determining whether 18 U.S.C. § 1513(b)(2) is a crime of violence for purposes of 18 U.S.C. § 924(c) (*Id.* at p. 4).

## ANALYSIS

A petition brought under 28 U.S.C. § 2255 allows a prisoner to attack his sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "Habeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006). There are "significant procedural hurdles" to consideration of a Fenderson's habeas claim. *Bousley v. United*

*States,* 523 U.S. 614, 615 (1998). Collateral relief is appropriate only when the error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States,* 113 F.3d 704, 705 (7th Cir. 1997).

Habeas relief under Section 2255 is not a substitute for direct appeal. *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000). Thus, "[c]laims not raised on direct appeal are barred from collateral review unless upon review, we have been convinced that a failure to consider the issue would amount to a fundamental miscarriage of justice." *Id.* at 433. Specifically, a § 2255 motion "*cannot* raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) non-constitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, *unless* the § 2255 Fenderson demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992) (emphasis in original), overruled on other grounds by *Castellanos v. United States,* 26 F.3d 717 (7th Cir. 1994).

If a § 2255 motion claiming ineffective assistance of counsel survives preliminary review and is considered on its merits, then a district court evaluates the claim under the two-pronged *Strickland* test. *McDowell v. Kingston,* 497 F.3d 757, 761 (7th Cir. 2007) (citing *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). There is a heavy burden of proof on a defendant asserting an ineffective assistance of counsel claim. *Harris v. Reed,* 894 F.2d 871, 874 (7th Cir. 1990). "The benchmark for judging any claim to ineffectiveness must be whether counsel's conduct so undermined the

proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Under *Strickland,* the petitioner must prove: 1) that his attorney's performance fell below an objective standard of reasonableness; and 2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have performance *or* the prejudice component of the ineffective assistance claim deficient under the *Strickland* test then there is no need to consider the sufficiency of the other component. *United States v. Slaughter,* 900 F.2d 1119, 1124 (7th Cir. 1990). "A defendant's failure to satisfy either prong is fatal to his claim." *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

In order to establish that counsel's performance was deficient, the defendant must show errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Hartjes,* 456 F.3d at 790. Proving that deficient performance of counsel actually prejudiced the defense requires a showing of the "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004); *see also Williams v. Taylor,* 529 U.S. 362, 363 (2000). This test is also "highly deferential to counsel and presumes reasonable judgment and effective trial strategy." *Hays v. United States,* 397 F.3d 564, 568 (7t Cir. 2005). The defendant must demonstrate that counsel's performance actually had an adverse effect. *Strickland,* 466 U.S. at 693. However, "[n]ot every adverse consequence of counsel's choices is

5

'prejudice' for constitutional purposes." *United States v. Springs,* 988 F.2d 746, 749 (7th Cir. 1993). Counsel's conduct must be shown to have "so undermined the proper functioning of the adversarial process that the trial cannot ne relied on as having produced a just result." *Cooper,* 378 F.3d at 642.

Fenderson pleaded guilty pursuant to a written plea agreement in which he waived his appeal and collateral review rights (CR. 65, pp. 10-11). The Plea Agreement reads in relevant part:

> 4. Defendant understands that by pleading guilty, Defendant is waiving all appellate issues that might have been available if Defendant had exercised the right to trial.
>
> 5. Defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack. However, in exchange for the recommendations and concessions made by the United States in this Plea Agreement, **Defendant knowingly and voluntarily waives the right to seek modification of or contest any aspect of the conviction or sentence in any type of proceeding**, including the manner in which the sentence was determined or imposed, that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), Defendant reserves the right to appeal the substantive reasonableness of the term of imprisonment. . . .
>
> 6. Defendant's waiver of the right to appeal or bring collateral challenges shall not apply to: 1) claims of ineffective assistance of counsel; 2) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders Defendant actually innocent of the charges covered herein; and 3) appeals based upon Sentencing Guideline amendments that are made retroactive by the United States Sentencing Commission (see U.S.S.G. § 1B1.10). The United States reserves the right to oppose such claims for relief.

Additionally, the Defendant made the following acknowledgement in his Plea Agreement:

> 1. Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and has discussed the United States' case, possible defenses and defense witnesses with defense counsel. Defendant's attorney has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and possible defenses. Defendant acknowledges having had adequate opportunity to discuss the potential consequences of the guilty plea with defense counsel. Defendant has had all of Defendant's questions answered by defense counsel. Defendant agrees that this Plea Agreement is not the result of any threats, duress or coercion. Defendant enters this guilty plea freely, voluntarily, and knowingly, because Defendant is in fact guilty (Doc. 65, p. 15).

Waivers of appeal in criminal cases are generally valid and binding in this circuit. *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2003); *United States v. Mason*, 343 F.3d 893, 893-894 (7th Cir. 2003); *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010). However, waivers of appeal do not foreclose appellate review in every instance, particularly when a defendant raises the specter of ineffective assistance of counsel and prosecutorial misconduct. *United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002); *Chapa*, at 868.

### Fenderson's trial counsel's performance did not fall below an objective standard of professional reasonableness.

Fenderson's trial counsel's performance was not constitutionally deficient due to his failure to raise the novel, and ultimately meritless, argument that Fenderson now advances. A lawyer, including one representing a criminal defendant, has an ethical obligation to be truthful and forthright with the court and has "no duty to make a frivolous argument." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003);

7

*see also Faucett v. United States*, 872 F.3d 506, 512 (7th Cir. 2017) ("Refraining from a meritless sentencing argument cannot be characterized as objectively unreasonable."). An attorney should not "to protect him or herself against allegations of inadequacy, waste the court's time with futile or frivolous motions." *United States v. Bosch*, 584 F.2d 1113, 1121-22 (1st Cir. 1978) (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)). Indeed, a lawyer is barred by the rules of professional ethics from doing so. *See Smith v. Robbins*, 528 U.S. 259, 272 (2000). Under those rules, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis . . . for doing so that is not frivolous." Rule 3.1 of the Model Rules of Professional Conduct.

While the particular issue raised by Fenderson is not frivolous, as one other court has since agreed with the position advanced by Fenderson, the failure of Fenderson's counsel to argue that categorical approach should have been deployed to determine if his conviction was for a crime of violence in the face of persuasive case law supporting the application of 18 U.S.C. § 924(c) based on Fenderson's conviction under 18 U.S.C. § 1513(b) was not clearly unreasonable. It was clearly not unreasonable for Fenderson's trial counsel to believe that shooting a witness constituted a crime of violence. In fact, there was case law supporting the disposition at the time of his plea and sentencing hearings. In *United States v. Harris*, the Eastern District of Wisconsin denied a motion to dismiss on this same ground that 18 U.S.C. § 1513(b) was not a crime of violence, finding that the witness retaliation statute fulfilled that definition. 323 F.Supp.3d 1065 (E.D. Wisc. Aug. 3, 2018).

8

This precise issue was decided by that court prior to the Fenderson's plea of guilty. Additionally, the Seventh Circuit has previously allowed at least one conviction under 18 U.S.C. § 924(c), based on § 1513(b), to stand, although the precise issue was not raised on appeal. *See United States v. Vaughn*, 267 F.3d 653 (7th Cir. 2001); *see also United States v. Calvert*, 511 F.3d 1237 (9th Cir. 2008). Furthermore, trial counsel states in his affidavit that he believes that attempting to retaliate against a witness is, in fact, a crime of violence (Doc. 8-7). Trial counsel was not ineffective for failing to challenge established legal precedent.

Even assuming that defense counsel was not aware of the *Harris* decision, this would have been a fairly novel legal argument, which has just recently gained traction in the Tenth Circuit alone. The Seventh Circuit has stated:

> If, however, the argument that the lawyer fails to make is a subtle or esoteric one-something most lawyers would not have thought of, however conscientious they might be-then the lawyer cannot be said to have fallen below the *minimum* level of professional competence by failing to make it, and so the claim of ineffective assistance would fail even if the argument turned out to be a valid ground for a new trial. Criminal defendants have a right to a competent lawyer, but not to Clarence Darrow. See, e.g., *Thomas v. Gilmore,* 144 F.3d 513, 515 (7th Cir.1998); *Wade v. Franzen,* 678 F.2d 56, 58 (7th Cir.1982). A lawyer is not to be deemed incompetent merely for lacking the imagination "to anticipate arguments or appellate issues that only blossomed after defendant's trial and appeal have concluded," *Sherrill v. Hargett,* 184 F.3d 1172, 1175 (10th Cir.1999), though the clever lawyer would have spotted the bud. *Rezin*, 322 F.3d at 446-47.

Even though defense counsel in other cases has raised this issue, although rarely, there certainly is not a clear consensus that Fenderson would have been entitled to relief. Although "[i]gnorance of well-defined legal principles is nearly

9

inexcusable," "law is no exact science" and "'the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.'" *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999). *See also United States v. Jones*, 918 F.2d 9, 11-12 (2d Cir. 1990) (declining to find ineffective assistance of counsel based on an "unsettled question of law").

Further, there were strong strategic reasons for advising the defendant to enter into the ultimate plea agreement with the United States in this case, irrespective of this legal question. As his plea counsel pointed out in his affidavit, even if he had pursued this argument, the length of time for potential incarceration based on a conviction for all other counts outweighed any benefit from dismissal of the relevant § 924(c) count. In fact, his plea counsel assessed his likelihood of conviction on all other counts as "nearly certain" (Doc. 8-1). In the face of such odds, the decision to advise a client to plead guilty rather than pursue an unsettled legal argument and thereby put plea negotiations at risk certainly cannot be viewed as clearly unreasonable, particularly in light of the "highly deferential" standard in reviewing attorney performance and strong presumption that counsel acted reasonably.

Trial counsel's performance was not deficient. Fenderson did not suffer any prejudice as a result of his attorney's decision not to assert the application of the categorical approach. Fenderson does not claim that he would not have pled guilty if his counsel had challenged the applicability of 18 U.S.C. § 1513(b) to an enhancement pursuant to 18 U.S.C. § 924(c). He also does not challenge the validity of his plea,

which the trial court determined that he entered knowingly and voluntarily (CR. 87). During the course of that knowing and voluntary plea, Fenderson admitted to all of the underlying conduct (*Id.*).

Fenderson did not suffer any prejudice as a result of any alleged deficiency because his underlying argument is meritless. First, § 1513(b) is a divisible statute, rendering the modified categorical approach appropriate. Under that approach, the relevant documents make clear that Fenderson committed a "crime of violence" under § 924(c). His conviction on the facts admitted at the time of the plea under § 1513(b) properly supports a conviction pursuant to § 924(c).

> **The statute criminalizing retaliation against a witness, 18 U.S.C. § 1513(b)(s) is a divisible statute, requiring the modified categorical approach in determining whether it qualifies as a crime of violence for purposes of 18 U.S.C. § 924(c)(1)(A).**

Fenderson argues that retaliation against a witness is not a "crime of violence" for purposes of 18 U.S.C. § 924(c). Section 924(c)(1)(A) prohibits the use of a firearm "during and in relation to any crime of violence." Section 924(c)(3)(A) defines "crime of violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." This prong of § 924(c) is known as the elements clause.

The Supreme Court has set forth two methods for analyzing whether a conviction qualifies as a "crime of violence" for purposes of enhancement pursuant to 18 U.S.C. § 924(c)(1)(A). Under the "categorical approach," a court generally may "look only to the fact of conviction and the statutory definition of the prior offense."

11

*Taylor v. United States*, 495 U.S. 575, 602 (1990). This approach applies if the statute "enumerates various factual means of committing a single element," rendering it "indivisible." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016).

If the statute of conviction lists elements in the alternative, however, rendering it "divisible," the court may apply the "modified categorical approach" and "look[] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id.*; *see Descamps v. United States*, 570 U.S. 254, 260-65 (2013). When a statute criminalizes multiple acts, courts look to the least of the acts criminalized to determine whether the crime fits within the definition of a "crime of violence" under the categorical approach. *Curtis Johnson v. United States*, 559 U.S. 133, 137-38 (2010). This type of determination requires "a realistic probability, not a theoretical possibility," that the crime can be committed in a way that falls outside the scope of the relevant "crime of violence" definition. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

Section 1513(b)(2) applies to any person who "knowingly engages in any conduct and thereby causes bodily injury to another person, or threatens to do so, with intent to retaliate against any person for any information relating the the . . . possible commission of a Federal offense." Thus this statute is divisible between "caus[ing] bodily injury" and "damag[ing] personal property," as well as between "threaten[ing] to" commit either offense." A plain language reading of the statute supports a finding that it is divisible. The statute uses the verb "causes" before the noun " bodily injury" and uses a different verb "damages," before the term "tangible property," implying

12

that the bodily- injury and property -damage variants have different elements, and thus are different crimes. The "threatens to do so" phrase relates back to the bodily injury and property damage offenses which implies that threatening bodily harm and threatening to damage property are two distinct threat crimes.

The second superseding indictment and plea agreement in this case refer only to causing bodily injury and make no mention of property damage (CR. 45, 65). "[A]n indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime. *Mathis,* 136 S. Ct. at 2257. The Government routinely charges defendants with the bodily injury offense alone, further supporting this argument. Several courts of appeals in those cases have held that the elements of the offense are (1) knowing engagement in conduct that (2) causes or threatens to cause bodily injury to another person, with (3) retaliatory intent. *See United States v. Cofield,* 11 F.3d 413, 419 (4th Cir. 1992); *United States v Gadson,* 763 F.3d 1189, 1218 (9th Cir. 2014; *United States v. Henderson,* 626 F.3d 326, 342 (6th Cir. 2010).

The Fourth Circuit recently addressed this precise issue and found that the witness retaliation statute is divisible. *United States v. Allred,* 2019 WL 5792489 (4th Cir. 2019). The Court explained,

> Section 1513(b)(1) easily divides into four separate general offenses: (1) engaging in conduct that causes bodily injury, (2) threatening to engage in conduct that causes bodily injury, (3) engaging in conduct that damages tangible property, and (4) threatening to engage in conduct that damages tangible property. Both the statute's plain text and other typical indicia of divisibility make this conclusion inescapable. *Allred,* 2019 WL 5792489 at 4.

13

The court then went on to examine whether "the behavior underlying one statutory phrase 'differs so significantly from the behavior underlying' another" that they must be treated as different crimes. *Id.* at 5 (citing *Chambers v. United States,* 555 U.S. 122, 126 (2009). In conducting this analysis, the Court held:

> Applying Chambers to the instant case, we have no trouble in concluding that § 1513(b) sets forth alternative elements and thus creates separate crimes. Put simply, the behavior typically underlying the causation of bodily injury "differs so significantly" from that underlying damage to property that those statutory phrases cannot plausibly be considered alternative means. Chambers, 555 U.S. at 126. The former is concerned with conduct threatening bodily integrity and safety, while the latter deals only with damage to physical possessions. Congress's decision to employ different verbs to characterize each of the proscribed harms (i.e., "causes" bodily injury versus "damages" tangible property) bolsters this conclusion. *Id.*

The *Allred* court further analyzed various model jury instructions that contemplate a jury being instructed as to either bodily injury or damage to tangible property, not both, as support for this conclusion, along with the fact that the Government typically charges this offense under one prong alone. *Id.* at 5-6.

Because § 1513(b) is a divisible statute, this Court can look to supporting documents, such as the second superseding indictment and Plea Agreement, to determine the specific conduct committed by Fenderson. The superseding indictment charges that Fenderson "did knowingly engage in conduct that caused bodily injury to T.R., with the intent to retaliate against T.R., in that Fenderson shot T.R. with a firearm believing that T.R. had given information to a law enforcement officer relating to the commission or possible commission of a Federal offense." (CR. 45). Further, the elements listed in the plea agreement, signed and agreed to by

Fenderson, state, "(1) The defendant knowingly caused bodily injury to T.R.; and (2) The defendant did so with the intent to retaliate against T.R. for any information relating to the possible commission of a federal offense given by T.R. to a law enforcement officer." (Doc. 65, p. 2). These elements were further recited by the trial judge and acknowledged by the defendant during his plea hearing. (Doc. 87, p. 12). At the time of his plea, Fenderson stipulated that after searching for and locating T.R., he and another individual "began shooting at T.R., striking him in the hip and lower leg. . . . T.R. was taken to a nearby hospital for treatment. The shot to T.R.'s lower leg broke both of the bones, requiring multiple surgeries to repair." (Doc. 66, p. 3). There is no doubt that Fenderson entered a plea of guilty to the element of causing bodily injury, as opposed to damaging tangible property. Furthermore, Fenderson does not even attempt to argue that "causing bodily injury" is not sufficient for 18 U.S.C. § 924(c). Clearly, he committed a crime of violence.

Because § 1513(b) satisfies the requirements of "physical force" set forth in § 924(c)(3)(A), it qualifies as a "crime of violence" for purposes of § 924(c)(1)(A). Therefore, Fenderson is not entitled to relief even under the categorical approach. This argument has no merit and Fenderson therefore did not suffer any prejudice as a result of his attorney's failure to raise it.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the Court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.

A petitioner's right to appeal a district court's denial of a Section 2255 petition is not absolute; it depends on whether the district court grants a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003). A certificate of appealability is warranted only where (1) a petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Fenderson has not made a substantial showing that he was denied a constitutional right. Reasonable jurists could not debate whether Fenderson's counsel was ineffective. The Court, therefore, declines to issue a certificate of appealability.

## CONCLUSION

In light of the foregoing, Fenderson's Motion to Vacate, Set Aside, or Correct the Sentence pursuant to § 2255 is **DENIED** and his claims are **DISMISSED** with prejudice. The Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

**DATED: March 15, 2021.**

                                                  /s/   *Stephen P. McGlynn*
                                                  **STEPHEN P. MCGLYNN**
                                                  **U.S. District Judge**